UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

PAUL TITUS SHIELDS,

        Plaintiff,

    v.                                    Case No.  03-CV-3172

BYRON D. LAW,
KEVIN L. WINTERS,
WILLIAM PARKER,
ROBERT A. SNOW, and
MR. BRADBURY,

        Defendants.

Order Granting Summary Judgment and Terminating Case

      Before the court is the defendants' motion for summary judgment (84)[1], which is granted for the reasons below.

Summary Judgment Standard

      A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).

      In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

---

[1]Defendants' second motion for summary judgment (d/e 84) was filed the same day as the first motion (d/e 81). The second motion appears to be an expanded version of the first. The court works off the second motion for purposes of this order.

<u>Remaining Claims</u>

The remaining claims in this case are:

1)      Defendant Law filed false disciplinary reports against the plaintiff on March 12, 2003, and June 3, 2003, in retaliation for the plaintiff's exercise of his First Amendment rights.

2)      Defendant Bradbury approved the plaintiff's temporary confinement based on the false disciplinary reports written March 12 and June 3, 2003, in retaliation for the plaintiff's exercise of his First Amendment rights.

3)      The prison conditions the plaintiff endured in segregation imposed on him as a result of the March 12 and June 3, 2003 disciplinary reports violated his Eighth Amendment rights.

4)      The strip search conducted on the plaintiff on June 3, 2003, by defendants Law and Snow violated the plaintiff's Eighth Amendment rights.

(5/11/04 Court Order, d/e 47).

<u>Undisputed Facts</u>

1.  The events occurred at Western Correctional Center, where the plaintiff was incarcerated at all times relevant.  In March of 2003, Plaintiff wrote State Senator James Meeks complaining about the lack of adequate time his family was allotted to visit with him while he was housed at Western Illinois Correctional Center.

2.  On June 4, June 9, and June 13, 2003, Plaintiff again wrote Senator Meeks' office requesting assistance in obtaining money from his sister, alleging he was issued a false disciplinary report, requesting copies of certain documents related to his criminal conviction, complaining of his recent placement in disciplinary grade "C," requesting his letters regarding these issues be forwarded to Governor Blagojevich and Congressman Danny Davis, that his inmate grievances were being withheld, and lastly that his legal papers were not being copied or were being stolen.

3.  On July 8, 2003, Plaintiff wrote Governor Blagojevich, the Senate offices of the 15 Legislative District, and Illinois Attorney General Lisa Madigan, regarding his transfer from Western Illinois Correctional Center to Pontiac Correctional Center, his criminal conviction, being issued false disciplinary reports, the withholding of his legal mail and inmate grievances, and the failure to investigate his complaints.

4.  On March 12, 2003, Plaintiff was issued a disciplinary report by Defendant Law, for the offense of "Intimidation or Threats."  According to the report, the plaintiff was taken out of the chow line for escort to segregation on a previous offense.  The plaintiff allegedly yelled, "They better not even let me out of seg this time or I'm going to tear this place up, I'm a gangster, check it and see bitch."  (Complaint, Ex. R24).  Defendant Bradbury signed off on the plaintiff's placement in temporary confinement in segregation based on the seriousness of the offense charged.  The plaintiff asserts that the disciplinary report was false and in retaliation for his letters. He also asserts that Defendant Bradbury failed to investigate the charges in retaliation for those letters.

5.  The Adjustment Committee found the plaintiff guilty on Defendant Law's March 12, 2003, disciplinary report.  The plaintiff received 3 months grade demotion, 20 days segregation, one year pay restriction and loss of contact visits for 24 months.  (Complaint, Ex. J25).

6.  On June 3, 2003, Defendant Law issued the plaintiff another disciplinary report for the offenses of "Disobeying a Direct Order," "Violation of Rules," "Insolence," and "Dangerous Communications."  Law accused the plaintiff of disrupting the chow line again by falling out of line to talk to another inmate.  According to the report, the plaintiff had said, "Fuck you bitch, you can't keep us from talking," in response to Law's orders to get

back in line.  (Complaint, Ex. K26).  Defendant Bradbury again signed off on the plaintiff's segregation based on the seriousness of the charge.  As with the March 12th report, the plaintiff asserts this report was false and in retaliation for his letters and grievance about Law's earlier report.  He again asserts that Defendant Bradbury signed off on his segregation in retaliation.

7.  The Adjustment Committee found the plaintiff guilty on Defendant Law's June 3, 2003, report, and imposed one month C grade and one month segregation.  (Complaint, Ex. K29).

8. Plaintiff was strip searched and subjected to a body cavity search upon his placement in segregation on June 3, 2003, after Defendant Law wrote the June 3rd disciplinary report.

9. All inmates, when taken to segregation, are stripped searched and subjected to a body cavity search.

10. These searches are to ensure no contraband items are smuggled into segregation.

11.  Accounts differ on how the strip search of the plaintiff was conducted on June 3, 2003.  According to the plaintiff, defendants Law and Snow forced him to show his buttocks over four times while they laughed and talked about him.  In his Complaint, the plaintiff alleges that Law stated, "Snow, Shields likes to threaten officers, with his little (   ?   ), he couldn't (?) on the streets." (Complaint, Statement of Claim, Question marks and underline in original).  The plaintiff replied, "You are killing me with that bull----."  Defendant Snow replied, "You threatened me, you hear that Lt. Law?"  The plaintiff testified in his deposition that, "Now, after I took off my underwear, they started laughing.  Now, this is embarrassing because there's a female here.  But I'm not fully developed, put it like that."  (Plaintiff's Dep. p. 35).[2]

12.  In contrast, a disciplinary report written by defendant Snow after the strip search accused the plaintiff of intimidation and threats and disobeying a direct order:

> [W]hile this C/O was conducting a strip search on I/M Shields N74859 due to his placement in segregation, this C/O gave IM Shields N74859 a direct order to bend over at the waist and spread his buttocks.  I/M Shields refused.  This C/O then gave another direct order to due [sic] the same. I/M Shields N74859 then looked at his C/O and stated "I'm going to kill one of you mother fuckers."  I/M Shields then stated, "I'll get out of seg."  I/M Shields N74859 refused several more direct orders before finally complying for Sgt. Logsdon. . .

(Complaint, Ex. I).  The plaintiff maintains that this account is false.  (Complaint, attachment titled Allegations of Each Defendant"; Ex. I22).

13.  The plaintiff was found guilty on Defendant Snow's June 3, 2003, disciplinary report.  This time, the plaintiff was demoted to C grade for three months, segregation for three months, and had one month of good time revoked.

<u>Analysis</u>

*Strip Search*

The plaintiff's procedural due process claims on Defendant Snow's June 3, 2003, disciplinary ticket on which he lost good time were dismissed on May 11, 2004, as barred by *Heck v. Humphrey*, 512 U.S. 477, 484-487 (1994).  Defendants are correct that *Heck* bars the plaintiff's claims that the disciplinary ticket was false, because if it was false, then the revocation of the plaintiff's good time was arguably invalid, which means the plaintiff should get out of prison sooner.  Challenge to the length of prison term cannot be made under 42 U.S.C. Section 1983.

---

[2]Only portions of the plaintiff's deposition are in the record.

*DeWalt v. Carter*, 224 F.3d 607, 615 (7th Cir. 1999)(claims that "necessarily impl[y] the invalidity of the punishment imposed (i.e., loss of good time credits) . . . [are] not cognizable under § 1983" until the prison disciplinary decision has been invalidated.").

The question not addressed in the court's May, 2004 order is whether the plaintiff's version of the strip search calls into question the validity of the June 3rd ticket by Defendant Snow.  If it does, then this claim is also barred by *Heck*.  *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)("[I]f [the plaintiff] makes allegations that are inconsistent with the conviction's having been valid *Heck* kicks in and bars his civil suit.  [Citations omitted].  He is the master of his ground."), *cert. denied*, 123 S.Ct. 2265 (2003); *see also Lewis v. Richards*, 107 F.3d 549, 555 (7th Cir. 1997)(inmate's claim of sexual assault barred by *Heck* where inmate received disciplinary report charging him with engaging in consensual sex).

The court concludes that the plaintiff's allegations about the strip search do call into question the validity of Defendant Snow's disciplinary report and the disciplinary findings.  The plaintiff has steadfastly maintained that he made no threats during the strip search and that Defendant Snow's account of the strip search was false, which would include Snow's charges that the plaintiff repeatedly refused direct orders to comply with the search.  While one might hypothesize that Defendant Snow's version could be true as well as plaintiff's allegations of the derogatory comments made, *Okoro* counsels against such a theoretical approach.  The court sees no room to hypothesize the disciplinary findings were valid under the plaintiff's version of events.  *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).  This claim must therefore be dismissed, without prejudice.

*Retaliation*

To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], . . ."  *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).  Other than his own conjecture, the plaintiff points to no evidence that Bradbury or Law were motivated by retaliation in writing the disciplinary reports or approving the plaintiff's segregation.  There is no evidence that either was even aware of the plaintiff's letters to politicians, nor does the plaintiff establish either defendants' knowledge of particular grievances or complaints about them.[3]  His assertions remain vague allegations unsupported by admissible evidence.  In short, no rational juror could find that Defendants Law or Bradbury were motivated by retaliation.  Summary judgment is therefore entered in his favor.

*Conditions in Segregation*

The plaintiff says he was denied food while in segregation.  He asserts, "My food denials was constant on every "fish day" and between fish days that was served every week and if the Court review my segregation from 3/6/03 thu 7/2/03 you will see these long periods of denials and the reasons I don't have grievances of this is because they was all <u>destroyed</u> . . ." (d/e 86, p. 6, *sics* throughout, underline in original).  He asserts that Defendants Winters and Parker knew about the plaintiff's complaints and failed to take any action.  He lists six persons who he wants to testify regarding the food denials, but there are no affidavits or other indications from these people that they would corroborate his claims.  (d/e 86, p. 16).

The plaintiff stated in his deposition that it was Officer Twaddell who denied him food (Plaintiff's Dep. p. 22, d/e 85).  Officer Twaddell is not a defendant in this case, and the plaintiff's vague assertions of complaints to defendants Winters and Parker are insufficient to impute personal responsibility to them.

The plaintiff's documents do not help his case either–they show that this claim is more about the plaintiff's

---

[3]The bulk of the letters were written after the alleged retaliatory attacks.  The March, 2003, letter was written before the alleged retaliation, but only challenged generally the visitation policy at Western.  There is no evidence that Defendant Law even knew of this letter when he wrote the March ticket, nor does the plaintiff explain why the March letter would engender Law's ire, since it had nothing to do with him.

aversion to fish than any denial of sustenance.  One document is a disciplinary report charging the plaintiff with falsely claiming that he needed a special diet tray because he was allergic to fish.  (d/e 94, Ex. F).  Another is a disciplinary report accusing the plaintiff of missing chowline because he was not properly dressed and displaying his identification as required.  No reasonable inference arises from these documents that the plaintiff was denied any food at all, much less on the kind of basis required for an Eighth Amendment claim.

In sum, the plaintiff's strip search claim is barred by legal precedent, and he has submitted enough evidence for a rational juror to find in his favor on his other remaining claims.  Summary judgment is therefore mandated for the defendants.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment is granted (d/e 84).  The plaintiff's claim regarding the strip search is dismissed, without prejudice, as barred by *Heck v. Humphrey*, 512 U.S. 477, 484-487 (1994).  The plaintiff's remaining claims are dismissed, with prejudice.

2) All other pending motions are denied as moot (d/e 81, 106, 107), and this case is terminated.  The parties shall bear their own costs.

3) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  If the plaintiff has acquired "three strikes" under the Prison Litigation Reform Act, he cannot proceed on appeal *in forma pauperis*.  If the plaintiff does choose to appeal, he will be liable for the $255.00 appellate filing fee irrespective of the outcome of the appeal.

Entered this   13th   Day of   September , 2005.

s\**Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE